UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GINA RAMAZETTI,

    Plaintiff,

v.                                                  Case No: 8:15-cv-2872-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**ORDER**

Plaintiff, Gina Ramazetti, seeks judicial review of the denial of her claims for a period of disability, disability insurance benefits, and supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

**BACKGROUND**

**A.    Procedural Background**

Plaintiff filed applications for disability insurance benefits and supplemental security income on November 16, 2012. (Tr. 251, 255, 295.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 161–86.) Plaintiff then requested an administrative hearing. (Tr. 187–88.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 45–75.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and, accordingly, denied Plaintiff's claims for benefits. (Tr. 21–37.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council

denied. (Tr. 1–6, 18–20.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

      **B.**      **Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1971, claimed disability beginning October 1, 2009. (Tr. 251.) Plaintiff has a high school education. (Tr. 36.) The ALJ determined that Plaintiff could not perform past relevant work. (Tr. 35.) Plaintiff alleged disability due to bipolar disorder, ADHD, depression, and a head injury. (Tr. 309.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since October 1, 2009, the alleged onset date. (Tr. 26.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, bipolar disorder, and poly-substance abuse, which Plaintiff reported was in remission for about four months. (Tr. 27.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 27.) The ALJ then concluded that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant may occasionally climb ladders, ropes and scaffolds, frequently climb ramps and stairs, and frequently balance, stoop, kneel, crouch and crawl. The claimant should avoid concentrated exposure to excessive vibration and concentrated exposure to industrial hazards such as the use of moving machinery and unprotected heights. The claimant retains the ability to understand, remember and carry out simple, routine and repetitive tasks and instructions, with no interaction with the general public and no more than occasional interaction with co-workers.

(Tr. 28–29.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to

the intensity, persistence, and limiting effects of her symptoms were not fully credible. (Tr. 32–33.)

The ALJ determined that Plaintiff could not perform past relevant work. (Tr. 35.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as laundry worker, garment sorter, and retail marker. (Tr. 36–37.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 37.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20

C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**ANALYSIS**

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ erred in his evaluation of opinion evidence; (2) the ALJ erred in evaluating Plaintiff's credibility; and (3) the ALJ's determination at step five of the sequential analysis was not supported by substantial evidence. For the reasons that follow, these contentions do not warrant reversal.

**A.   Opinion Evidence**

Plaintiff argues that the ALJ failed to properly weigh the opinions of treating physician Dr. Steven Yale and consultative examiners Dr. Jeffrey Merin and Dr. Alan Lewis. (Dkt. 18 at 11–13.)

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). This standard applies equally to the opinions of treating and non-treating physicians. *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015). Importantly, however, while all medical opinions must be considered, including opinions regarding a claimant's RFC, a claimant's RFC is a decision "reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2); *Denomme v. Comm'r of Soc. Sec.*, 518 F. App'x 875, 877–78 (11th Cir. 2013).

In determining the weight to afford a medical opinion, the ALJ considers the examining and treatment relationship between the claimant and doctor, the length of the treatment and the frequency of the examination, the nature and extent of the treatment relationship, the supportability and consistency of the evidence, the specialization of the doctor, and other factors that tend to support or contradict the opinion. *Hearn v. Comm'r of Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015). The medical opinions of a treating physician must be given substantial or

considerable weight unless good cause is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2). Good cause exists when the doctor's opinion is not bolstered by the evidence, the evidence supported a contrary finding, or the doctor's opinion is conclusory or inconsistent with his or her own medical records. *Winschel*, 631 F.3d at 1179.

### 1. Dr. Yale

Dr. Yale completed two mental capacity assessments of Plaintiff, one in March 2013 (Tr. 569–71), and the second in July 2013. (Tr. 636–40.) The ALJ summarized Plaintiff's treatment history with Dr. Yale. (Tr. 31, 32.) Next, the ALJ evaluated Dr. Yale's March 2013 opinion. (Tr. 34.) The ALJ accorded the opinion some weight, to the extent consistent with his RFC assessment, and otherwise, accorded it little weight. (Tr. 34.) The ALJ noted that Dr. Yale's findings that Plaintiff had only slight impairment in her ability to understand, remember, and carry out simple instructions (Tr. 569), and had moderate limitations in interacting with co-workers (Tr. 570), were consistent with his RFC assessment. (Tr. 34.) However, the ALJ found Dr. Yale's finding that Plaintiff had marked limitations with maintaining basic standards of neatness and cleanliness (Tr. 570), unsupported by the record. (Tr. 34.)

Finally, the ALJ evaluated Dr. Yale's July 2013 opinion, affording it little weight. (Tr. 34.) Specifically, he found Dr. Yale's opinion that Plaintiff was physically unable to work an eight-hour workday (Tr. 637), inapposite because Dr. Yale treated Plaintiff's mental, not physical, impairments, and because the record did not show that Plaintiff suffered any physical impairments precluding her from work. (Tr. 34–35.) The ALJ also noted that although Dr. Yale responded to a question about Plaintiff's substance abuse with "not applicable" (Tr. 640), Plaintiff testified that

she was using drugs in 2013, and that treatment records during this time showed that Plaintiff reported to Dr. Yale that her condition was improved or stable. (Tr. 34–35.)

Plaintiff argues that the ALJ erred in his evaluation of Dr. Yale's opinions because they are consistent with the record evidence and supported by Dr. Yale's treatment notes. (Dkt. 18 at 11.) However, Plaintiff does not identify the portions of Dr. Yale's opinions that were not properly evaluated by the ALJ, and, importantly, does not argue that there are any specific limitations identified by Dr. Yale that the ALJ failed to incorporate into his RFC assessment. Although Plaintiff cites the second page of Dr. Yale's March 2013 assessment, arguing that the ALJ ignored Dr. Yale's opinion that "even while on psychotropic medications and mood stabilizers, Plaintiff remained a threat to herself, co-workers, and customers when she was employed" (Dkt. 18 at 12), Plaintiff offers no argument as to whether this should have been incorporated into the ALJ's RFC assessment. As such, Plaintiff's conclusory argument is insufficient to preserve this issue for appeal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("[A]n appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it."). Accordingly, Plaintiff's contention as to Dr. Yale does not warrant reversal.

    **2.**     **Dr. Merin**

Next, Plaintiff argues that the ALJ failed to properly evaluate Dr. Merin's opinion. Dr. Merin evaluated Plaintiff in June 2006 on referral from the Division of Vocational Rehabilitation. (Tr. 443–50.) Dr. Merin made the following recommendation: "[i]n view of [Plaintiff's] previous history of employment difficulties, in combination with current neuropsychological test results,

supported employment is recommended. She will require long-term assistance." (Tr. 450.) In his conclusions, Dr. Merin elaborated that Plaintiff "may have marked difficulties initiating and maintaining the necessary resources for independent work. She may require a great deal of structure and supervision in order to obtain vocational success." (Tr. 449.)

The ALJ evaluated Dr. Merin's opinion, and did not fully credit Dr. Merin's findings or his diagnosis that Plaintiff had dementia resulting from a head injury. (Tr. 30–31.) Specifically, the ALJ found that Dr. Merin's opinion that Plaintiff would only be capable of performing work in a supported environment conflicted with evidence, citing Exhibit 4D, that Plaintiff "worked at substantial gainful activity or nearly substantial gainful activity in 2001, 2003, 2004, 2005, 2007, and 2008." (Tr. 31.) Further, the ALJ acknowledged that although Plaintiff has limitations caused by her mental impairments, there is no record evidence showing that Plaintiff requires a supported work environment. (Tr. 34.)

Plaintiff argues that the ALJ erred in his evaluation of Dr. Merin's opinion because "[t]he fact that Plaintiff was somehow able to reach substantial gainful activity or nearly substantial gainful activity levels despite frequent verbal outbursts does not mean that Dr. Merin's diagnosis of dementia post head injury and opined limitations are not valid reflections of his examination." (Dkt. 18 at 12.)

Dr. Merin was not a treating physician, but instead evaluated Plaintiff on referral as part of her application for benefits. Thus, Dr. Merin's opinions were not entitled to deference by the ALJ. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (finding that opinions of consultative examining physicians "are not entitled to deference because as one-time examiners they were not treating physicians"); *Crawford*, 363 F.3d at 1160–61 ("The ALJ correctly found that, because [a consultative examiner] examined [claimant] on only one occasion, her opinion was not entitled to

great weight."); 20 C.F.R. § 404.1527(c)(2) (explaining that treating sources are given greater weight because their opinions "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). Accordingly, although the ALJ was required to "state with particularity the weight given to [Dr. Merin's] and the reasons therefor," *Winschel*, 631 F.3d at 1179, because Dr. Merin was not a treating physician, the ALJ was not required to articulate good cause for affording his opinion little weight. *See Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) (rejecting application of the "good cause" standard because the opinion at issue was made by a physician who "saw [claimant] only one time").

Here, the ALJ considered Dr. Merin's opinion, stated that he afforded the opinion little weight, and provided his reasoning for doing so. (Tr. 30–31, 34.) Accordingly, Plaintiff's contention concerning Dr. Merin's opinion does not warrant reversal.

### 3. Dr. Lewis

Finally, Plaintiff argues that the ALJ failed to address a portion of Dr. Lewis's opinion regarding the impact of Plaintiff's emotional disorder on her ability to sustain employment. (Dkt. 18 at 13.) In July 2006, Dr. Lewis completed a Social Security Disability Evaluation, in which he interviewed Plaintiff and provided a mental status opinion. (Tr. 452–54.) Dr. Lewis diagnosed Plaintiff with bipolar disorder, panic disorder with agoraphobia, and "Problems with Employment, Emotional Status and Health Status." (Tr. 454.) In a "Capability Statement," Dr. Lewis opined that Plaintiff "appears to be able to manage her cash funds," but "[a]t present her emotional disorder impacts her ability to sustain employment, work with co-workers and respond appropriately to supervisors and the general public." (Tr. 454.)

The ALJ summarized Dr. Lewis's findings.  (Tr. 31.)  The ALJ accorded Dr. Lewis's opinion "some weight," stating that his opinion that Plaintiff is capable of managing her personal finances "well supported by the record and [Plaintiff's] activities of daily living."  (Tr. 34.)  In his RFC finding, the ALJ found that Plaintiff should have no interaction with the general public, and no more than occasional interaction with co-workers.  (Tr. 29.)

Plaintiff argues that the ALJ failed to address the portion of the opinion in which Dr. Lewis found that Plaintiff's emotional disorder, at the time of his evaluation, impacted her ability to sustain employment, work with co-workers, and respond appropriately to supervisors and the general public. (Dkt. 18 at 13.)  In response, citing an Eleventh Circuit decision, Defendant argues that "the Eleventh Circuit held that an ALJ was not required to address particular limitations identified by a treating physician because the written decision made clear that the ALJ considered the opinion and claimant's medical condition as a whole."  (Dkt. 19 at 14) (citing *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531 (11th Cir. 2014).)

Here, it is clear that the ALJ considered Dr. Lewis's opinions because he summarized his evaluation and accorded his opinion some weight (Tr. 31, 34).  *See Adams*, 586 F. App'x at 534 (reasoning that "the ALJ did not err by failing to specifically address [Plaintiff's treating physician's] opinion that [claimant] should avoid frequent overhead reaching, and that she needed to take 5–minute breaks every 45 minutes, as [the ALJ's] written decision made clear that he considered both the [treating physician's] opinion and [claimant's] medical condition as a whole"). Plaintiff is correct that the ALJ did not explicitly state his consideration of Dr. Lewis's opinions regarding Plaintiff's ability to interact with the general public, co-workers, and supervisors. However, the ALJ's RFC assessment addresses the issues Dr. Lewis found Plaintiff to have in interacting with others in a work setting because the ALJ's RFC determination provides that

Plaintiff have no interaction with the general public, and finds Plaintiff capable of only occasional interaction with co-workers. (Tr. 29.) Finally, although the ALJ must consider all medical opinions including Dr. Lewis's, the "final responsibility" for determining Plaintiff's RFC "is reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2). Accordingly, Plaintiff's contention regarding Dr. Lewis does not warrant reversal.

### B.     Plaintiff's Credibility

Next, Plaintiff argues that the ALJ erred in finding Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms not entirely credible. (Dkt. 18 at 13–17.) Specifically, Plaintiff argues that the ALJ erred in his credibility determination in the following ways: the ALJ's consideration of Plaintiff's performing substantial gainful activity for much of the time since her accident is flawed because her mental limitations from her car accident make it difficult for Plaintiff to consistently maintain substantial gainful activity; the opinions of Dr. Yale, Dr. Merin, and Dr. Lewis were that Plaintiff had workplace limitations due to her injuries from her car accident; and the ALJ's characterization of Plaintiff's testimony regarding her substance abuse was inaccurate. (Dkt. 18 at 14–17.)

In addition to the objective evidence of record, the ALJ must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a). A three-part "pain standard" applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). A plaintiff must show: (1) objective medical evidence of an underlying medical condition and either (2) objective medical evidence that substantiates the severity of the pain from the

condition or (3) that the objectively determined medical condition is of sufficient severity that it would reasonably be expected to produce the pain alleged. *Id.*; *Wilson*, 284 F.3d at 1225.

If the ALJ does not credit a claimant's testimony, the ALJ "must articulate explicit and adequate reasons for doing so." *Holt*, 921 F.2d at 1223. On review, a court must not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). The ALJ's failure to articulate adequate reasons requires that, as a matter of law, the claimant's testimony is accepted as true. *Holt*, 921 F.2d at 1223. However, "[a] lack of an explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case." *Foote*, 67 F.3d at 1562. When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms. 20 C.F.R. § 404.1529(c)(3).

A review of the ALJ's decision reflects that the ALJ carefully considered Plaintiff's testimony and provided adequate reasons for finding Plaintiff not entirely credible. The ALJ explained that Plaintiff's testimony regarding her limitations stemming from her 1990 car accident were not supported by the record. (Tr. 33.) First, the ALJ explained that Plaintiff has performed substantial gainful activity, or nearly substantial gainful activity, since the time of her accident, "which indicates that [Plaintiff's] accident did not result in an inability to work." (Tr. 33.) Further, the ALJ found that although Plaintiff suffers from depression and bipolar disorder, there is no record evidence supporting any other cognitive impairment caused by her accident, and, generally, there was a gap in Plaintiff's treatment from 1990 to 2005. (Tr. 33.) Next, the ALJ stated that he accounted for Plaintiff's symptoms of impaired concentration and memory and issues with

outbursts of anger by limiting Plaintiff to performing simple, routine tasks, and limiting her interaction with co-workers and the general public. (Tr. 33.) Finally, the ALJ stated that he did "not find [Plaintiff's] substance abuse to be material," but he did "note that the record supports a finding that her drug abuse is far more extensive and long lasting than she has admitted." (Tr. 34.)

Plaintiff's daily activities, including her performance of work activities, is a relevant factor for the ALJ to consider in his evaluation of Plaintiff's testimony about her symptoms. 20 C.F.R. § 404.1529(c)(3)(i). Thus, Plaintiff's argument that Plaintiff's ability to perform work was not an appropriate consideration is without merit. Further, the ALJ properly evaluated whether Plaintiff's testimony was "consistent with the objective medical evidence," 20 C.F.R. § 404.1529(a), namely evidence of Plaintiff's cognitive injuries from her 1990 accident. And, to the extent Plaintiff argues that the opinions of Dr. Yale, Dr. Merin, and Dr. Lewis showed evidence of Plaintiff's cognitive impairments, the Court has determined that the ALJ did not err in his evaluation of these opinions. *See* discussion *supra* Section A. Finally, as to Plaintiff's argument regarding the ALJ's evaluation of Plaintiff's history of substance abuse, as Plaintiff acknowledges (Dkt. 18 at 16), the ALJ found Plaintiff's substance abuse immaterial to his decision. (Tr. 34.)

Accordingly, contrary to Plaintiff's contentions, the ALJ "articulate[d] explicit and adequate reasons for" discrediting Plaintiff's testimony. *Foote*, 67 F.3d at 1561–62. Plaintiff's second contention, therefore, does not warrant reversal.

### C. Determination at Step Five

Finally, Plaintiff argues that the ALJ's errors in evaluating the opinion evidence and Plaintiff's credibility "render the Step 5 finding inherently unsupported by substantial evidence." (Dkt. 18 at 17.) However, the Court has determined that the ALJ did not err in his evaluation of

the opinion evidence or Plaintiff's credibility.  *See* discussion *supra* Sections A and B.  As such, Plaintiff's final argument on appeal fails.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on February 22, 2017.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record